**FOREMOST DAIRIES, Inc. v. IVEY et al.**

**IVEY et al. v. FOREMOST DAIRIES, Inc.**

No. 14386.

United States Court of Appeals
Fifth Circuit.

May 6, 1953.

Erle Phillips and I. Walter Fisher, Atlanta, Ga., Fisher & Phillips, Atlanta, Ga., Booth, Lockard & Jack, Shreveport, La., for appellant and appellee.

Frederick J. Stewart, Shreveport, La., for appellees and appellants.

Before HOLMES, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellees, plaintiffs below, recovered amounts aggregating $6,350.95 plus attorney's fees of $2,000 under the maximum hours provisions of the Fair Labor Standards Act, 29 U.S.C.A. §§ 207, 216. Because of the full statement contained in the opinion of the District Court reported at 106 F.Supp. 793, we forego a lengthy delineation of the facts.

■ Appellant's specification of the errors relied upon contained in its brief pursuant to Rule 24(2) (b) of this Court[1] is broader and includes rulings not mentioned in its statement of points made under Rule 75(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[2] Relying upon Bennett

---

[1] "2. This brief shall contain, in order here stated—
"(a) * * * * * *
"(b) A specification of the errors relied upon, which shall set out separately and particularly each error asserted and intended to be urged. Errors not specified according to this rule will be disregarded; but the court, at its option, may notice a plain error not specified."

[2] That Rule provides:
"*Statement of Points.* No assignment of errors is necessary. If the appellant does not designate for inclusion the com-

**188**

v. Scofield, 5 Cir., 170 F.2d 887, 889, the appellees insist that matters not included in the appellant's statement of points should not be considered by this Court. In that case, however, the complete record was not sent up; while the record on appeal in this case includes all of the pleadings and evidence and the opinion and judgment of the court. Since the only purpose of the statement of points under Rule 75(d), supra, is to assure a record adequate for their consideration, we think that we should consider all of appellant's specification of errors.

Therein, appellant complains: (1) that plaintiffs failed to prove the number of hours they worked overtime; (2) that eight of the plaintiffs were exempt under 29 U.S. C.A. § 213(b) (1)[3] from the maximum hours provisions of the Act; (3) that the proof was not sufficient to show that plaintiffs Barrett, Alford and Wise were engaged in the production of goods for commerce.

■■■ The contract under which the employees worked provides in part: "Nine (9) hours shall constitute a regular day's work and fifty-four (54) hours shall constitute a regular week's work". Records were kept reflecting the number of days but not the number of hours per week worked by each man. One of the employees testified that by "sort of a mutual understanding between the Superintendent and the boys" they worked some days more than nine hours and some days less "so that it would equalize itself". There was no evidence to the contrary. We think that the record and reasonable inferences made out a *prima facie* case, and that the burden shifted to the employer to come forward with countervailing evidence. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515.

The basis of the claim of exemption under 29 U.S.C.A. § 213(b) (1) is that the

regular duties of eight of the eleven plaintiffs included loading defendant's trucks with goods unloaded from out-of-state freight cars and affected the safety of operation of vehicles carrying goods in interstate commerce. There is no specification of error that any of the plaintiffs were exempt as drivers and the claim is confined to loaders.

■ None of the plaintiffs were full time loaders. Eight of them from time to time went to railheads approximately three miles from defendant's plant where they rolled cans of condensed cream and milk out of the refrigerated box cars and loaded them on to defendant's truck for transportation to the plant. The appellees insist that the short haul from the rail siding to the plant was not interstate commerce, but we think that under the principle stated in Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460, there was "a practical continuity of movement of the goods" until they reached the plant for which they were intended.

The cans full of milk or cream weighed about 108 pounds each. It was necessary to put "plugged" cans on the bottom, and "umbrella" lids on top, otherwise the cans on top would fall over. A rope would usually have to be tied across the back of the truck to keep the cans from falling out.

■ The burden of proving that each of the plaintiffs fell within the exemption rested upon the defendant. Coast Van Lines v. Armstrong, 9 Cir., 167 F.2d 705, 707. The evidence as to the extent to which each of the eight plaintiffs engaged in loading is fairly summarized by the appellant as follows:

"The number of trips to the railhead made by the individual complainants varied. Summarized below is the number of trips which each complainant *admitted* making:

(1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49 * * *."

plete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on which he intends to rely on the appeal."

3. "(b) The provisions of section 207 of this title shall not apply with respect to

| "Name | • • • Trips to Railhead |
|---|---|
| "Jesse Ivey | * Ten (Total). |
| "Lee G. Nunley | * Two or three trips per week during winter (skipping some weeks); a few trips during the summer months. |
| "Harvey Dunn | * Seven (Total). |
| "Luther McCollister.. | * An average of once per week during the winter months, skipping some weeks. Very seldom in the summer. |
| "Loyd A. Williamson | * An average of once per week in winter months and somewhat less during summer months. |
| "Paul Ivey | * Every week during the winter. |

"Archie Pollard did not testify positively as to the number of trips which he made to the railhead. He went to the railhead in 'cold weather' which he first said was January and February. He also stated that during the latter part of October, the weather starts getting cooler, resulting in a decrease of business in the ice cream department and making available more time for such duties as going to the railhead.

"B. F. Mitchell did not testify, and the only evidence regarding his duties was given by Loyd Williamson, who said he was pretty sure Mitchell made trips to the railhead.

"The 'winter months' were described as being from November through June or July."

While there is considerable conflict, the preponderance of the evidence shows that the plaintiff Paul Ivey was usually in charge of the loading though Ivey admitted that there were times when an unnamed colored employee drove and loaded the truck. Paul Ivey testified in part:

"Q. Was it your responsibility to see that it was stacked that way? A. Yes, sir, it was because I was the oldest man that would be going and I would have to show and tell them how it was done because I felt it was my responsibility to see that it was stacked right and get back to the plant safely with it.

"Q. What would happen if one of the boys wanted to stack the cans three high? A. I would have to tell them they couldn't do it because there was danger of them falling off.

* * * * *

"Q. What was there about this operation, Mr. Ivey, about the loading, that would make you kind of uneasy? A. Well, to have it stacked in the truck where it wouldn't fall out or spill out when you put on your brakes if you had to come to a sudden stop, because it would fall out of the back of the truck, or spill, and you had to have it stacked in there right and had to have it tied so it wouldn't spill out or fall out of the truck."

■ Under 29 U.S.C.A. § 213(b) (1) to exempt an employee from the maximum hours provisions of the Fair Labor Standards Act it is necessary only that the Interstate Commerce Commission have "power" to establish his qualifications and maximum hours of service. Safety of operation is the key phrase for the test of that power. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. In Morris v. McComb, 332 U.S. 422, 431, 68 S.Ct. 131, 135, 92 L.Ed. 44, referring to Levinson v. Spector Motor Service, 330 U.S. 649, 674–675, 67 S.Ct. 931, 91 L.Ed. 1158, the court said:

"Under the tests of the Commission's power, as approved in both the majority and minority opinions in the Levinson case, and, under the analysis of that power developed by the Interstate Commerce Commission and cited in that case, it is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment'."

■ Morris v. McComb, supra, involved drivers for a common carrier and this court's opinion in Kerr v. Jeans, 5 Cir., 193 F.2d 572, involved a driver for a private carrier. Full time loaders were involved in Levinson v. Spector Motor Service, supra, and employees who were engaged in loading during only parts of their time were involved in Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.

Ct. 954, 91 L.Ed. 1184. It is not necessary to restate the law as fully set forth in the opinions in those cases. Our conclusion is that the defendant met its burden of proof insofar as Paul Ivey was concerned, but not as to the other seven of these eight employees. The proof was not sufficient to establish as to those seven that during any substantial part of their work time they shared in the exercise of discretion as to the manner in which the loading was done. See Pyramid Motor Freight Corp. v. Ispass, supra; McKeown v. Southern California Freight Forwarders, D.C.Cal., 49 F.Supp. 543.

 Barrett was a gas pump attendant. He described his duties as: "I gas up all the trucks and after they were in I would check oil and carry it out to them, and radiators." He serviced the trucks that went out after the railroad shipments and the few trucks which carried milk and ice cream to out-of-state customers. Alford was a maintenance man in the milk vaults. He also helped load out the milk trucks and the ice cream trucks, one of which went out of state four times a week during the summer months and once a week during the winter months. Wise operated a bottle washing machine, washing all bottles used by the defendant. It was stipulated that, "except for going down to the railroad stations, his duties were the same as this man (Jesse Ivey) and the wages were the same as his". We do not think that the court erred in holding that Barrett, Alford, and Wise were engaged in the production of goods for commerce.

By cross-appeal the appellees complain of the action of the district court in denying plaintiffs' claims for liquidated damages and for interest. Section 11 of the Portal to Portal Act of 1947, 29 U.S.C.A., § 260, provides in effect that, if the employer shows to the satisfaction of the court that he acted in good faith and had reasonable grounds for believing that he was not violating the Fair Labor Standards Act, then, the court in its sound discretion may award no liquidated damages. The employees during the period covered by the complaint were paid in accordance with the provisions of a collective bargaining agreement between the defendant and the Teamster's Union. When the question of coverage under the Fair Labor Standards Act arose during the course of negotiations, an expert employed by the Union stated his opinion that there was no coverage and that opinion was shared by defendant's lawyer and by a lawyer representing another dairy company which conducted joint negotiations with the Union. Clearly, the district court did not abuse its discretion in denying the claim for liquidated damages.

 Liquidated damages, if allowed, would act as compensation for delay in the payment of sums due under the Act. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 715, 65 S.Ct. 895, 89 L.Ed. 1296. We agree with the Third and Sixth Circuits that interest as such is not recoverable under this statute. Landaas v. Canister Co., 188 F.2d 768, 772; Clougherty v. James Vernor Co., 187 F.2d 288, 293; see also Wyatt v. Holtville Alfalfa Mills, D.C., 106 F.Supp. 624, 633; contra, Asselta v. 149 Madison Avenue Corp., D.C., 95 F.Supp. 856, 858.

That part of the judgment in favor of Paul Ivey is reversed and in all other respects the judgment is affirmed, with costs taxed against the appellant.

Reversed in part and affirmed in part.