

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-1999

# Brooks v. Village of Ridgefiel

Precedential or Non-Precedential:

Docket 98-6357

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Brooks v. Village of Ridgefiel" (1999). *1999 Decisions.* Paper 212.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/212

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6357

ALBERT J. BROOKS, and others similarly situated

v.

VILLAGE OF RIDGEFIELD PARK, New Jersey;
RIDGEFIELD PARK POLICE DEPARTMENT

Village of Ridgefield Park, New Jersey,

      Appellant

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 96-cv-01079
District Judge: Honorable William H. Walls

Argued: May 18, 1999

Before: BECKER, Chief Judge, RENDELL and ROSENN,
Circuit Judges.

(Filed July 21, 1999)

        David W. Garland (Argued)
        Sills, Cummis, Radin, Tischman,
        Epstein & Gross
        One Riverfront Plaza
        Newark, NJ 07102
        Counsel for the Appellant

Alan S. Kaufman (Argued)
Chamberlain & Kaufman
35 Fuller Road
Albany, NJ 12205
Counsel for Appellees

OPINION OF THE COURT

ROSENN, Circuit Judge.

The primary issue raised on this appeal is an unusual question of statutory interpretation: does a municipality violate the Fair Labor Standards Act, 29 U.S.C.S 201 et seq. ("the Act" or "FLSA") when it complies with its employees' request that their overtime compensation be accumulated and payment deferred for as much as six weeks after their regular pay. The plaintiff, Albert J. Brooks, a K-9 police officer of the Village of Ridgefield Park (the Village), filed a complaint in the United States District Court for the District of New Jersey on his behalf and others similarly situated alleging, inter alia , that the Village violated Section 207(a) the Act by failing to pay them overtime promptly. The complaint also sought statutory liquidated damages in an amount equal to the late overtime which Brooks already had received in accordance with the collective bargaining agreement between the police officers and the Village.

Before trial, seven other police officers employed by the Village joined the litigation as plaintiffs. Brooks, the initial plaintiff, and LaTour, another K-9 officer, settled all of their claims with the Village. As a result, the only claim remaining was for liquidated damages by the other officers. The parties cross-moved for summary judgment. The district court denied the Village motion for summary judgment and held that the municipality was in violation of the FLSA because its overtime payments violated the FLSA. The court awarded liquidated damages to the plaintiffs and the parties stipulated to the amount. The Village timely appealed.[1] We affirm in part and vacate in part, remanding

_____

1. We have jurisdiction under 28 U.S.C. S 1291. The district court had subject matter jurisdiction under 29 U.S.C. S 206. The district court entered judgment for the plaintiffs in the aggregate amount of $55,403.53 plus reasonable attorney's fees and costs.

2

for further proceedings with respect to the Village's good faith defense to the plaintiffs' claims for liquidated damages.

I.

On March 8, 1996, Brooks commenced this action alleging that the defendant Village violated the FLSA by failing to pay him and other Village police officers for the time they spent outside regular working hours caring for Village-owned police dogs. He later amended the complaint to include a second claim, alleging that the Village violated the FLSA by failing to pay overtime promptly in violation of 29 U.S.C. S 207(a). Subsequently, seven other Village police officers joined the action as plaintiffs.

The parties agreed to submit the liquidated damages issue to the district court to determine whether the Village acted reasonably and in good faith based on stipulated facts, various documents and legal memoranda. The court found that the Village failed to comply with the proof requirements imposed by this court upon employers who seek to escape the otherwise mandatory award of liquidated damages. Reluctantly, the district court awarded liquidated damages to the plaintiffs, but invited the Village to seek appellate review.

II.

On appeal, the Village raised two issues. First, did the district court correctly conclude that the deferred payment of overtime as contained in the collective bargaining agreement between the Village and its police officers violated the FLSA? Second, all overtime wages having been paid in full within six weeks or less of the time earned, did the district court err in awarding liquidated damages, a sum equal to the full overtime already paid? Subsumed in this question is whether the district court correctly concluded that the Village failed to establish a good faith defense.

A.

We turn to the first question and commence with a brief background of the FLSA. Congress enacted the Act almost

3

at the very depth of the Great Depression of 1932 that drove this nation into economic and social convulsions. "Millions of families ... were trying to live on incomes so meager that the pall of family disaster hung over them day by day." Lipman, Plesur, and Katz, A Call for Bright-Lines to Fix the Fair Labor Standards Act, 11 Hofstra Lab. L.J. 357, 359 (Spring, 1994)

One of the objectives of the Act was to increase the size of the work force, thereby spreading the work and reducing unemployment. Congress believed that requiring employers to pay an overtime premium whenever an employee worked over forty hours in a work week would encourage employers to hire additional workers rather than pay the overtime penalty. Another objective of the FLSA was to ensure a fixed, fair minimum wage and a reasonable workweek for industries where workers did not have sufficient bargaining power to achieve "fair working conditions and collective agreements." Id. at 359-60. The Supreme Court of the United States observed that the Act recognized the unequal bargaining power between employer and employee, and that "certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706-07 (1945). (Footnote omitted). To accomplish its objectives, Congress provided in the FLSA for minimum wages and a standard work week of forty hours with premium pay for hours in excess thereof. 29 U.S.C. S 207(a)(1). When an employer violates the overtime provisions of the Act, Section 216(b) of the FLSA provides for payment of both unpaid wages and an equivalent amount of liquidated damages. 29 U.S.C. S 216(b).

The FLSA originally did not apply to state and local government. However, the Court's decision in Garcia v. San Antonio Metro. Transit. Auth., 469 U.S. 528 (1985), extended the scope of the Act to state and local governments, reversing its prior decision in National League of Cities v. Usery, 426 U.S. 833 (1976). In Usery, the Court had held that states and municipalities were not subject to this kind of federal regulation. Although the Village was aware of

4

Garcia and of its obligation to abide by the FLSA, Village officials believed that there was nothing improper about their deferred overtime payment schedule, especially because Local 36 of the Policemen's Benevolent Association ("the PBA"), the exclusive bargaining representative for the local police officers, solicited and agreed to the payment schedule set forth in the collective bargaining agreement. Moreover, officials of the Village relied on its labor counsel for advice and guidance in drafting a labor contract whose contractual provisions complied with federal and state law. The agreement ultimately negotiated and drafted also had the benefit of PBA's labor counsel.

We turn to the initial question whether the FLSA mandates the payment of overtime wages promptly and, if so, may the parties be permitted to defer payment by consensual agreement.

B.

For many years, a collective bargaining agreement had been in effect between the Village and the PBA governing the terms and conditions of plaintiffs' employment. The Village has always paid the plaintiffs their regular pay on a weekly basis pursuant to the terms of the current collective bargaining agreement and the Act.

In the negotiations for the 1982–83 collective bargaining agreement, the Village representatives understood from the PBA that its members wanted overtime to accumulate and be paid to them by separate check on a monthly basis rather than on a weekly basis because it better served their personal conveniences. The payment schedule at issue here allowing the accumulation of overtime had remained unchanged in successive collective bargaining agreements until December 1996. The Village then modified the collective bargaining agreement without objection by the PBA to provide for payment of overtime on a weekly basis in response to the claims raised in this lawsuit.

The Village knew of Garcia and of its obligation to abide by the FLSA. Village police chief Walter Grossman attended a seminar jointly held by the New Jersey Association of Chiefs of Police and the New Jersey Conference of Mayors

5

sometime in the mid-1980's at which Garcia and the FLSA were discussed. Elizabeth Hannigan, Village Clerk from 1984 to 1993, received information concerning Garcia from the League of Municipalities sometime in 1985. Fred Criscuolo, Village Mayor from 1980 to 1992, was aware that the FLSA had become applicable to municipalities, but did not know the extent of its application.

All village officials understood that after Garcia the FLSA required overtime pay after forty hours of work in a week. Even before Garcia, the Village had complied, and even went beyond the statutory requirements. In accordance with the collective bargaining agreement, it paid premium pay after eight hours in a day, and for work on a regularly scheduled day off, and premium pay for other time outside of the regularly scheduled workday, such as court appearances. Thus, Village police officers were paid overtime on a daily basis if they worked over eight hours and whenever they worked more than forty hours in a week. It is undisputed that all Village police officers have always received the full amount of overtime compensation due in accordance with the payment schedule set forth in the collective bargaining agreement. The overtime compensation, however, was not paid weekly with the regular pay but within six weeks or less after the work week as requested by the police officers.

C.

The FLSA does not specifically address when overtime compensation must be paid. Many years after its enactment, the Department of Labor ("DOL") issued an interpretative bulletin in 1972 fixing a time limit for the payment of overtime compensation. The Bulletin reads in pertinent part:

> There is no requirement in the Act that overtime compensation be paid weekly. ... Payment [however] may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made ... ." 29 C.F.R. S 778.106.

6

The district court adopted the interpretation contained in DOL's bulletin, although it mistakenly characterized it as a regulation. See Brook v. Village of Ridgefield Park, New Jersey, 978 F.Supp. 613, 617 (D.N.J. 1997). The court thoughtfully reasoned that were it to hold that "an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages became `unpaid' under the statute. Employers would then be permitted to withhold overtime compensation for some undefined period of time without incurring any legal liability and employees would be left with no recourse during this delay." Id. at 617–18. The court therefore concluded that the Village violated Section 207(a) of the FLSA unless the Village satisfied the exception found within the bulletin. The exception permits an employer to delay payment for a period "reasonably necessary for the employer to compute and arrange for payment of the amount due if the correct amount of overtime compensation cannot be determined until some time after the regular pay period[.]" Id. at 618. The court concluded that the Village failed to make any evidentiary showing that the exception contained in the bulletin applied. Id. It therefore held that the Village was required to pay the plaintiffs for overtime on the regular pay day for each week.[2]

The Village, however, contends that there is no FLSA violation. It submits that the district court erred in relying on the DOL's interpretative bulletin. It further asserts that the bulletin provides a guideline, not an inflexible rule, for determining whether the payment schedule satisfied the FLSA. Admittedly, interpretive bulletins do not rise to the level of a regulation and do not have the effect of law. A court is not required to give effect to an administrative interpretation. See Batterson v. Francis, 432 U.S. 416, 425 n.9 (1977)(citing General Electric Co. v. Gilbert, 429 U.S. 125, 141–145 (1976); Morton v. Ruiz, 415 U.S. 199, 231–37 (1974)). Instead, the level of deference given to an

_____

[2]. The district court's interpretation and application of the FLSA is subject to plenary review. See Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991).

7

interpretative bulletin is governed by the bulletin's persuasiveness. See Reich v. Gateway Press, Inc. , 13 F.3d 685, 699 n.17 (3d Cir. 1994); Goldberg v. Sorvas , 294 F.2d 841, 847 and 847 n.11 (3d Cir. 1961).We believe the DOL bulletin is a reasonable construction of the FLSA. 3 The Court's decision in Walling v. Harnischfeger Corp., 325 U.S. 427, 432–33 (1944) and our decision in Dunlop v. New Jersey, 522 F.2d 504, 510 n.10 (3d Cir. 1975) suggest this result. The reasons advanced by the district court for following the bulletin are pragmatic and persuasive. We therefore perceive no error in the district court's ruling that the overtime payment schedule of the Village violated the Act.4

_____

3. "While the interpretative bulletins are not issued as regulations under statutory authority, they do carry persuasiveness as an expression of the view of those experienced in the administration of the Act and acting with the advice of a staff specializing in its interpretation and application." Overnight Motor Co. v. Missel , 316 U.S. 572, 580–581 (1941).

4. The dissent is apprehensive that we are "superimposing the terms of the interpretive bulletin" on the statute with respect to overtime payments which contains no time of payment requirement with respect to overtime. However, we plainly have stated in the text of this opinion that "the interpretive bulletin does not have the effect of law" (supra at 9) and that the level of deference given to it depends upon the bulletin's persuasiveness. Our opinion holds that the FLSA impliedly requires prompt payment, not because the bulletin trumps the statute or imposes its terms upon the Act, but to hold otherwise would negate its overtime provisions. A rejection of the prompt payment requirement for overtime would leave employers and employees without any standard for determining when overtime wages become unpaid under the FLSA and employers would be permitted to withhold them indefinitely without any recourse for the employee.

Caruso v. Blockbuster – Sony Music Entertainment Center, 174 F.2d 166 (3d Cir. 1999) relied on by the dissent, is inapposite. In Caruso, Congress directed the Department of Justice to issue regulations with respect to the Americans with Disabilities Act. Accordingly, regulations, having the effect of law, require public notice and comment before their adoption by an administrative agency or any alteration in the agency's new interpretation of its regulations which result in significantly different
rights and duties than previously existed. No regulation is involved in this case and, therefore, there is no issue concerning notice–and–comment rule making.

8

The Village plausibly argues that the DOL interpretative bulletin is not controlling in the circumstances before us because the parties negotiated the overtime compensation schedule; both possessed equal bargaining power, negotiated in good faith, and incorporated the schedule in successive collective bargaining agreements over a period of years. Furthermore, the Village reminds us that it was at the behest of the Union that the agreements provided for the officers to accumulate overtime pay; the schedule, it urges, served the police officers' personal convenience, did not offend the objectives of the FLSA, and was not contrary to law.

The nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective bargaining agreement. See Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740-41 (1981). See also Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 463 (1948)("nothing to our knowledge in any act authorizes us to give decisive weight to contract declarations as to the regular rate of pay because they are the result of collective bargaining."); Jewell Ridge Coal Corp. v. Mine Workers, 325 U.S. 161, 167 (1945)("employees are not to be deprived of the benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents.").

We understand the Village's agitation, considering that the delayed payment of the officers' overtime compensation was the brainchild of the police officers themselves. Nonetheless, we hold that as a matter of logic and policy, the provision of the interpretive bulletin embodies an important aspect of the FLSA and must be sustained. We therefore perceive no error in the district court's conclusion that the Village violated Section 207(a) of the FLSA. We believe, however, that the Village's argument is more suitable for consideration in our discussion pertaining to the plaintiffs' claim for liquidated damages for the Village's violation. We therefore turn to that issue.

III.

A.

The FLSA provides that "[a]n employer who violates the [overtime] provisions of ... section 207 ... shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation, ... and in an additional equal amount as liquidated damages ... ." 29 U.S.C. S216(b). The liquidated damages provision amounts to a Congressional recognition that failure to pay the statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers"5 that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due. See Brooklyn Savings, 324 U.S. at 707; Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991).

Congress subsequently mitigated the harshness of the liquidated damage provision of Section 216(b) with the enactment of Section 260 of the Portal-to-Portal Act. This section permits the district court in its sound discretion to withhold or reduce the amount of liquidated damages"if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. S 260. In Martin, this court explained:

> The good faith requirement is a subjective one that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." ... The reasonableness requirement imposes an objective standard by which to judge the employer's conduct ... Ignorance alone will not exonerate the employer under the objective reasonableness test ...
>
> If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and

_____

5. Section 2(a), 52 Stat. 1060.

10

reasonableness requirements, the district court is
without discretion to deny liquidated damages.

713<!>940 F.2d at 907-08 (quoting Williams v. Tri-County
Growers, Inc., 747 F.2d 121, 129 (3d Cir. 1984))(emphasis
in original).

In determining an employer's subjective good faith, a
court must find that the employer had an honest intention
to ascertain and follow the dictates of the FLSA. Marshall v.
Brunner, 668 F.2d 748, 753 (3d Cir. 1982). Meanwhile, the
reasonableness of an employer's conduct is determined by
an objective standard. Id. To satisfy the objective standard,
"the employer must act `as a reasonably prudent man
would have acted under the same circumstances.' " Addison
v. Huron Stevedoring Corp., 204 F.2d 88, 92 (2d Cir.
1953)(quoting Addison v. Huron Stevedoring Corp. , 96
F.Supp. 142, 155 (S.D.N.Y. 1950). Hence, an employer's
ignorance alone is not sufficient in meeting the objective
test. See Brunner, 668 F.2d at 753.

B.

The Village argues that it made a good faith effort to
comply with the FLSA by taking affirmative steps to meet
its obligations under the Act. The Village noted that it, as
well as the PBA, retained experienced labor counsel and
relied on counsels' advice during the collective bargaining
negotiations. It reasonably expected of counsel that the
terms and conditions negotiated by them in good faith
complied with the law. In rejecting the Village's defense that
it acted reasonably and in good faith, the district court
reluctantly concluded that our decision in Martin precluded
such a defense. We do not agree.

The focal point of our decision in Martin concerned the
basic overtime pay and record keeping provisions of the
FLSA, as well as the "administrative" exemption provided
under Section 213(a)(1) of the Act. 940 F.2d at 899. The
decision did not concern delay in overtime payments,
particularly when the delay is at the employees' Union's
request. In Martin, it was undisputed that the employer
failed to pay any overtime compensation to its assistant
warehouse managers, computer operators, purchasing

11

agents and inside sales persons. Id. Instead, the employer argued that its inside salespersons and purchasing agents were exempt from the Act's overtime payment requirement under Section 213(a)(1), despite stipulating that its assistant warehouse managers and computer operators were not exempt. Id. As a threshold matter, the employer claimed that its inside salespersons and purchasing agents occupied bona fide administrative positions that exempted them from the forty hour weekly maximum provision under the Section 207(a) of the Act. Id.6

Disagreeing with the employer's claimed exemption, the district court in Martin determined that the employer's "inside sales persons `[we]re not engaged in `servicing' the business,' " and thus, the employees failed to qualify for exemption under the Act. Id. at 904. We affirmed in part on the basis that the district court's determination was not clearly erroneous within the meaning of Section 213(a)(1) of the FLSA because the employees did not qualify under the first prong of the Secretary of Labor's short test regulation codified under 29 C.F.R. SS 541.2(e)(2) and 541.214. This regulation focuses on whether a particular employee's primary duties are related to management policies or general business operations. See Id. at 901, 905, 906-07, 907 n.10.7

The plaintiffs in the instant case, unlike the plaintiff in Martin, can only point to an obscure interpretive bulletin, which does not carry with it the mandatory weight of the Act, nor does it even rise to the level of a regulation. What constitutes "prompt" payment for overtime compensation is neither a provision of the FLSA itself nor is it defined by the

_____

6. In addition to Martin, the district court cited Williams as precedent obligating an award for liquidated damages. However, the employer in Williams, like the employer in Martin, violated among other things the mandatory requirements specifically set forth under the FLSA. In particular, in Williams, the employer not only failed to pay its employees the minimum wage rate for all hours worked mandated under Sections 206 (a)(5) & (a)(1), but also failed to maintain accurate records as explicitly required under Section 211(c) of the FLSA. 747 F.2d at 127.

7. As we previously noted, unlike interpretive bulletins, regulations are given " `considerable and in some cases decisive weight.' " Skidmore v. Swift, 323 U.S. 134, 140 (1944).

Act. Moreover, the text of the DOL interpretative bulletin notes that "[t]here is no requirement in the Act that overtime compensation be paid weekly." See 29 C.F.R. S 778.106.

Thus, considering the record before us, and the circumstances under which the employer acquiesced to the deferral of overtime payment, there was little, if any, reason to put the Village on notice that it was potentially violating the DOL's bulletin. At oral argument, plaintiffs argued that counsel representing the Village should have inquired on his own as to whether the parties' delayed payment arrangement complied with the FLSA. Nothing occurred, and no one suggested that some further inquiry should be made, especially since the time scheduled for premium payment was consensual. Under such circumstances, counsel's failure to make further inquiry does not necessarily constitute a lack of good faith and reasonable conduct on the part of the Village officials.

The anomaly of this litigation is highlighted by an analysis of the Village's good faith argument. The essence of this lawsuit arises out of the plaintiffs' persistent request over many years that their overtime be paid separately and accumulated. The employer now is being sued by the plaintiffs for having complied with their request made through their exclusive bargaining agent, the PBA, during the course of collective bargaining. Under the Labor Relations Act, collective bargaining is required to be conducted in good faith. Instituting this litigation by the plaintiffs suggests, therefore, that the plaintiffs did not bargain in good faith. In no time during the negotiation of successive collective bargaining contracts did the employees or their Union raise any objection to the deferred payment of overtime or its legality. Because the deferment of overtime originated with the plaintiffs and their Union, it is understandable that the Village had no reason to believe that the overtime pay could not be legally delayed.

Nonetheless, the plaintiffs argue that the Village took no steps to ascertain or follow the FLSA; that the Village was on notice that the FLSA barred it from satisfying the employees' request for deferment and that it should have taken affirmative steps to inquire whether deferment was

13

legally permissible. The defendants stipulated that they have no evidence that they ever researched the legality under the FLSA of the payment schedule in the collective bargaining agreement or that they ever asked counsel to review the legality of overtime payment structure before the amended complaint was filed. The Village officials and their counsel had no recollection of ever researching or seeking advice on the legality under the FLSA or any provision of the FLSA before the filing of the amended complaint.

Furthermore, the plaintiffs argue that the Village had in its possession since 1986 an approximately five hundred page tome entitled "Special Report, FLSA: What It Means, What To Do," which might have advised it whether employees could waive their rights. The book attempts to assist readers in familiarizing themselves with the FLSA and its impact on states and municipalities after Garcia. The stipulation of facts refers to four places in the book with respect to general principles of overtime, its computation, and questions and answers pertaining to "cash overtime." Our perusal of the book does not disclose a single page dedicated to the precise issue before us. The plaintiffs may be stretching too far when they expect lay officials of a municipality to thoroughly review, have the ability to know the substance and legal interpretation of the contents, and find the answer to this issue, in that huge volume.

In response, the Village notes its reliance on the collective bargaining negotiations, as well as the retention by the PBA of experienced labor counsel and the Village's reliance on its own counsel during the collective bargaining negotiations. Therefore, it asserts that it was reasonably entitled to believe that the provisions of the contract did not controvert the law, including the FLSA.8  The district court,

_____

8. In support of its position, the Village cites Featsent v. City of Youngstown, 70 F.3d 900 (6th Cir. 1995). In that case, as in this, municipal counsel represented the City in collective bargaining negotiations and there was no evidence that at any time the City's attorney advised it that the contractual method of calculating overtime violated the FLSA. The court stated that "[f]rom its attorney's silence, the
City was entitled to the reasonable belief that the Agreement did not

14

however, believed that under precedents of this circuit, the Village had to present proof "that it took any affirmative steps to determine the FLSA's requirements as to the timing of overtime payments," and, in the absence of such evidence, it was "precluded from finding that the Village had a good faith and reasonable belief that its overtime payment schedule did not violate the statute." Brooks, et al. v. Village of Ridgefield Park, et al., unpublished letter order, issued August 27, 1998 (Cir. No. 96-1079) at 5.

We do not believe that the affirmative action required under the facts in Martin precludes a determination by the court of good faith and reasonableness by the Village in the circumstances of this case in complying with its obligations under the FLSA. In Martin, the employer was concerned with the mandatory core requirements of the Act itself on the delicate and highly important question of whether a segment of its employees was totally exempt from compliance with the minimum wage, hour, and record requirements of the Act. Here, the employer is concerned with none of the mandatory requirements of the Act, but only compliance with an interpretive bulletin relating merely to a consensual deferment of overtime pay only. In Martin, the employer unilaterally adopted a practice that would permit it to escape payment required under the minimum wage and hour provisions of the Act. Here, the employer fulfilled all of the basic wage and hour requirements of the Act; the only issue is the timeliness of overtime payment. In Martin, the employer unilaterally eliminated a segment of its labor force from the mandatory provisions of the Act. In this case, the employer acted consensually with its employees pursuant to collective bargaining in good faith under the Labor Relations Act. In this case, deferring payment of the required overtime served the convenience of the workers and in no way constituted

_____

violate the law, including the FLSA." Id. at 907. The Featsent court also cited with approval similar decisions of the Fourth and Fifth Circuits: Foremost Dairies v. Ivey, 204 F.2d 186, 190 (5th Cir. 1953); Hill v. J. C. Penney Co., Inc., 668 F.2d 370,375 (5th Cir. 1982); Van Dyke v. Blufield Gas Co., 210 F.2d 620, 622 (4th Cir. 1954).

15

an attempt to escape the minimum wage and hours provision of the FLSA.9

Because the district court believed it was precluded from finding that the Village had acted in good faith and reasonably believed that its overtime payments did not violate the Act, the court made no findings of fact on the issue. We believe that neither Martin nor any of our precedents preclude the district court in the circumstances of this case from determining whether the Village acted reasonably and in good faith in complying with the request of their employees. Accordingly, we will remand this case to the district court with instructions to make the requisite findings of fact on this issue.

IV.

In summary, we hold that the failure of an employer subject to the FLSA to pay overtime promptly in accordance with the DOL's 1972 bulletin violates the Fair Labor Standards Act. However, we believe that Martin and earlier precedents of this court are inapposite to the facts and circumstances of this case and do not preclude the trial court from determining whether the defendant acted reasonably and in good faith in consensually deferring payment of the overtime due the plaintiffs. Accordingly, the judgment of the district court with respect to liquidated damages will be vacated and the case remanded for proceedings consistent with this opinion and for the

_____

9. We note that in Martin, the employer's failure to comply with the minimum wage, hour and record provisions struck at the objectives and purpose of the Act – the maintenance of a standard of living "necessary for the health, efficiency, and general well being of workers." In this case,
deferring payment of the required overtime served the convenience of the workers and in no way constituted a threat to their health and general well being or an attempt to escape the minimum wage, hour and overtime pay. Granting liquidated damages under such circumstances may, in the words of the district court, "result in a windfall to the plaintiffs that runs contrary to the compensatory purposes of this remedy." 978 F. Supp. at 619.

requisite findings of fact.

Each side to bear its own costs.

17

RENDELL, Circuit Judge, dissenting:

My difficulty with my colleagues' ruling stems from their initial determination that the interpretive bulletin at issue should be engrafted on the statute, so that the Village is held to have violated "the Act." The majority then follows a tortuous route to essentially strip the bulletin of its force by crafting a new element of the "good faith" test whereby if the violation was based upon a mere interpretative bulletin and was consensual, the good faith exception may apply.

Instead, I urge that we should conclude, as we did in Caruso v. Blockbuster-Sony Music Entertainment Centre, Nos. 97-5693, 97-5764, 1999 WL 185040 (3d Cir. Apr. 6 1999), that an agency's interpretive pronouncement that effects a substantive change in the law (as opposed to merely providing an interpretation of an ambiguous statutory provision) does not have the force of law. By superimposing the terms of the interpretive bulletin regarding the time within which overtime payments must be made on a statute which contains absolutely no time of payment requirement with respect to overtime, we are not deferring to an interpretation, but, rather, we are effecting a substantive change, which, as we pointed out in Caruso, should occur only after the notice and comment that precede the enactment of a regulation.1  Id. at *9 ("[I]f an agency's new interpretation will result in significantly different rights and duties . . . , notice and comment is required."); see also Dia Navigation Co. v. Pomeroy, 34 F.3d 1255, 1265 (3d Cir. 1994) (rejecting an agency regulation imposing new duties and obligations beyond the reach of the statute without the benefit of notice and comment). Case law has viewed this particular bulletin as a"guide," and I suggest that we should not heighten its significance by endowing it with the force of law. See Reich v. Interstate Brands Corp., 57 F.3d 574, 576 (7th Cir. 1995); Beaston v. Scotland School for Veterans' Children, 693 F. Supp. 234

_____

1. The concept of "prompt" payment of overtime originated in caselaw. See Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). I do not quarrel with that requirement and believe the payment here could be said to be "prompt." However, the agency interpretation at issue goes far beyond "prompt," mandating, in this case, next paycheck swiftness.

18

(M.D. Pa. 1988). Accordingly, I would reverse because there has been no violation of the Fair Labor Standards Act. Therefore, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

19