Vincent **CAHILL**, et al., Plaintiffs,

v.

**CITY OF NEW BRUNSWICK,**
Defendant.

No. CIV. A. 97–4359.

United States District Court,
D. New Jersey.

May 23, 2000.

Gerald Jay Resnick, Deutsch, Resnick, Green & Gramigna, Springfield, NJ, for Plaintiffs Vincent Cahill, et al.

Charly Gayden, Assistant City Attorney, William J. Hamilton, City Attorney, New Brunswick, NJ, for Defendant City of New Brunswick.

## OPINION

WALLS, District Judge.

Plaintiffs, police officers with the City of New Brunswick, move for summary judgment and an award of unpaid overtime wages, liquidated damages, and attorneys' fees. The defendant City cross-moves to dismiss the complaint for failure to state a claim for relief. While these motions were pending, plaintiffs moved for temporary restraints and requested a hearing regarding the issuance of a permanent injunction. The court heard oral argument on May 16, 2000.

## INTRODUCTION

This action stems from the plaintiffs' work at "extra-duty jobs," which arise when a non-governmental outside vendor or contractor seeks a police officer for services. The defendant City oversees this program: it maintains an "Extra Duty Job Coordinator" who takes requests from outside vendors and assigns officers who are interested in the work. Plaintiffs are paid by the City for these overtime assignments.

The present dispute centers on the time of payment of officers for extra-duty jobs. The plaintiffs contend that they have been forced to wait weeks and sometimes months before being paid for extra-duty assignments. They assert that such delay violates the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 201 *et seq.* Presently, they do not challenge any other aspect of their pay arrangements. Though

their initial complaint also asserted violations of the minimum wage standards of the FLSA, plaintiffs do not now press these claims.

## DISCUSSION

### 1. *Conversion to Motion for Summary Judgment*

As said, the City styled its motion as one to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). However, the defendant's argument rests largely on the certifications of New Brunswick Director of Police Michael Beltranena, Jr. and Detective David Martella, Extra–Duty Coordinator. *See* Def. Br. Exh. A; Def. Reply Br. Exh. A.

Fed.R.Civ.P. 12(b) directs:

If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Fed.R.Civ.P.] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion made pertinent to such a motion by Rule 56.

This court has complete discretion to accept such materials beyond the pleadings. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 905 n. 3 (3rd Cir.1997); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil 2d § 1366 at 491 (1990). However, should it so choose, the court is required to convert the motion to one for summary judgment and provide the parties notice and a reasonable opportunity to present all relevant material. *See, e.g., In re Rockefeller Center Properties Sec. Litig.*, 184 F.3d 280, 287–289 (3rd Cir.1999); *Rose v. Bartle*, 871 F.2d 331, 339–343 (3rd Cir.1989).

Here both parties have submitted extra-pleading materials; the plaintiffs respond to the City's motion to dismiss with the Supplemental Affidavit of Jeff Dockhorn.

The court finds that consideration of these materials will facilitate the resolution of this action, particularly the issue, whether plaintiffs on extra-duty assignment are "employees" of defendant within the meaning of the FLSA. Accordingly, the court by letter on April 27, 2000 notified the parties that the defendant's Rule 12(b)(6) motion would be converted to one for summary judgment pursuant to Fed. R.Civ.P. 56, and authorized both sides to submit additional evidence.

### 2. *Summary Judgment Standard*

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem*

*Steel Co.,* 533 F.2d 96, 99 (3rd Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3rd Cir.1980).

### 3. Whether Plaintiffs are "Employees" Under the FLSA

The defendant City first contends that, during the times plaintiffs worked at extra-duty job assignments, they were independent contractors in relation to it. As non-employees, plaintiffs would not be protected by the FLSA.

The definitions of "employee" and "employer" in the federal statute are notoriously circular: 29 U.S.C. § 203(e)(1) defines "employee" as "any individual employed by an employer," and § 203(d) in turn explains that an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee...." Finally, "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g).

▇ Faced with this lack of clarity, defendant turns to the Tenth Circuit decision, *Baker v. Flint Eng'g,* 137 F.3d 1436 (10th Cir.1998), which deployed an "economic realities" test to determine if individuals were employees under the FLSA. Its focus was on "whether the individual is economically dependent on the business to which he renders service ... or is, as a matter of economic fact, in business for himself." *Id.* at 1440 (citations to Tenth Circuit decisions omitted). Back home, the Third Circuit has adopted a test crafted by the Ninth Circuit, *Donovan v. Sureway Cleaners,* 656 F.2d 1368 (9th Cir. 1981), which weighed six "itemized factors" with an additional consideration:

1) [T]he degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.... In addition, Sureway Cleaners instructs that neither the presence nor absence of any particular factor is dispositive and that courts should examine the "circumstances of the whole activity," [citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ] and should consider whether, as a matter of economic reality, the individuals "are dependent upon the business to which they render service."

*Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376, 1382 (3rd Cir.1985); *see also Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1293 (3rd Cir.1991) (citing *DialAmerica* ). It is clear that this court may not accept without further inquiry the defendant's assertion that extra-duty plaintiffs were independent contractors: "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

The court acknowledges the defendant's reliance on *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.,* 2 F.Supp.2d 688 (E.D.Pa.1998). *See* Def. Br. at 3. There the Eastern District of Pennsylvania cited *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), for the guide that "where [a] statute does not helpfully define the term 'employee,' courts are to

use a common-law agency test to determine employee status." *Jean Anderson*, 2 F.Supp.2d at 693. Yet the *Darden* decision reached only the definition of "employee" under ERISA—and expressly held that the comparatively expansive definition under the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." 503 U.S. at 326–27, 112 S.Ct. 1344. Because both the Supreme Court and the Third Circuit have addressed the FLSA definition of "employee," this court does not share the defendant's reliance on a common law agency approach. *See, e.g., Rutherford*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; *DialAmerica*, 757 F.2d 1376.

■■ Factually, the defendant argues that when the plaintiffs serve at extra-duty assignments, they are under the control of outside entities, and the New Brunswick Police Department has "no say in the length of the employment, the location of the employment, nor ... the number of hours required by the assignment.... The Department merely provides the personnel needed." Def. Br. at 1; *see also* Beltranena Cert. ¶¶ 2, 5, 6. It is undisputed that no formal contract is entered between the City and the outside vendor. Def. Br. at 1. Further, the City contended at oral argument that the outside vendors, not the Police Department, control the existence, duration, and type of extra-duty assignments.

Plaintiffs counter that the City is "inextricably involved" in the extra-duty job assignment process: when an outside vendor or contractor seeks an officer for services, it contacts the Police Department and a police personnel Extra–Duty Job Coordinator locates an available officer from a master list maintained. Dockhorn Suppl. Aff. ¶ 3. When an officer agrees to fulfill an extra-duty assignment, the officer first reports to the Desk Sergeant and then travels in uniform with full gear and active radio to the off-site location. "This is mandatory, since if there is an accident or a robbery in the officer's location, even though on extra-duty status, he must respond to the scene." *Id.* Further, another police personnel, a Road Sergeant, visits extra-duty officers during their shifts to ensure that they are uniformed and performing their duties, and that the job is in compliance with local ordinances. *Id.* ¶ 4. The plaintiffs raise two additional points to demonstrate the City's level of involvement. First, they claim that pursuant to New Brunswick Police Department General Order No. 3.10(1)(a)(5), officers working extra-duty jobs are considered to have "on-duty" status. *Id.* ¶ 3. Second, they evidence that for each hour an officer works at extra-duty, the City deducts a portion of the officer's pay as "administrative costs." The City's "cut" has increased, since late 1999, from $2.00 per hour to $4.00 and, most recently, to $9.00 per hour. And finally, the City admitted at oral argument that the plaintiffs are police officers "24 hours a day," and that should an officer be injured during an extra-duty assignment, he or she would likely be eligible for workers' compensation benefits.

Given such evidence, the City of New Brunswick may not avoid the requirements of the FLSA by claiming that extra-duty officers are not its employees. This court rejects the contention that uniformed and armed police officers, supervised (even minimally) by Police Department personnel, given assignments and paid by the Police Department, metamorphose into independent contractors for the period of their extra-duty assignments. The court finds that extra-duty officers are employees of the defendant City.

### 4. *FLSA Liability*

Plaintiffs move for summary judgment on liability under the FLSA: They contend that the City has failed to timely pay the officers' overtime pay for extra-duty shifts. Though they acknowledge the defendant's explanation that extra-duty overtime cannot be paid until the City is itself

paid by the outside vendors, plaintiffs argue this does not constitute a defense under the law. Pl. Br. at 2. They seek summary judgment for an award of: 1) outstanding overtime payments of $9,632.50; 2) liquidated damages of $257,-786.40; and 3) counsel fees and costs. *Id.;* *see also* 29 U.S.C. § 216(b).

Plaintiffs rely on 29 U.S.C. § 207(a), which mandates the payment of "time and a half" wages for any hours worked in excess of 40 hours per week for most employees. That provision does not state when such overtime compensation must be paid. However, the Department of Labor (DOL) in 1972 issued an "interpretive bulletin" which fixes certain time limits:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made....

29 C.F.R. § 778.106.

■ This court recently had occasion to apply the DOL bulletin in *Brooks v. Village of Ridgefield Park,* 978 F.Supp. 613 (D.N.J.1997). There Ridgefield Park police officers sued the Village for its failure to make prompt overtime payments, and relied on both the statute and the bulletin at issue here. This court recognized that though interpretive bulletins are not officially promulgated regulations, and thus do not bind the court with the same

effect as law, "courts ought to show 'great deference to the interpretation given the statute by the officers or agency charged with its administration.'" *Id.* at 617 (quoting *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)). The court reasoned:

> If this Court were to hold that an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages become "unpaid" under [29 U.S.C. § 216(b), which establishes employer liability for unpaid overtime compensation]. Employers would then be permitted to withhold overtime compensation for some indefinite period of time without incurring any legal liability and employees would be left with no recourse during this delay. Allowing such a delay in the payment of wages would run counter to the primary purpose of the FLSA to "protect certain groups ... from substandard wages and excessive hours."

*Id.* at 617–618 (citation omitted). Accordingly, the court adopted the interpretive bulletin and granted the plaintiffs' motion for summary judgment as to liability under § 207(a). *Id.* at 619. On appeal, the Third Circuit approved this court's adoption of the DOL bulletin: "We believe the DOL bulletin is a reasonable construction of the FLSA.... We therefore perceive no error in the district court's ruling that the overtime payment schedule ... violated the Act [as interpreted by the DOL bulletin]." *Brooks v. Village of Ridgefield Park,* 185 F.3d 130, 135–36 (3rd Cir.1999). And the Circuit Court agreed that the Village should be held liable under § 207(a). *Id.* at 136.

Not surprisingly, present plaintiffs insist that the two *Brooks* decisions are controlling and that the City of New Brunswick must be adjudged liable as a matter of law. *See also Biggs v. Wilson,* 1 F.3d 1537 (9th Cir.1993) (holding that late payment of

minimum wages constitutes nonpayment under FLSA, based on exhaustive review of general statutory scheme, analogous caselaw, and Department of Labor interpretations); *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 576 (7th Cir.1995) (citing 29 C.F.R. § 778.106); *Dominici v. Board of Educ. of Chicago*, 881 F.Supp. 315 (N.D.Ill.1995) (concluding from caselaw and 29 C.F.R. § 778.106 that untimely payment of overtime wages violates the FLSA, despite Board of Education's defense that delay was involuntary); *Brennan v. New Jersey et al.*, 1973 WL 1285, at *2 (D.N.J.1973) (holding that 29 C.F.R. § 778.106 "specifically states that overtime payment must be made within the regular pay period, unless for some reason delay is required to allow the employer to computer overtime payments.").

The defendant does not appear to contest its liability, though it strongly objects to the requested award of liquidated damages, which the court will address below. *See* Def. Br. at 2. Nonetheless, the court is hesitant to apply the *Brooks* reasoning wholesale because of the defendant's claims that: 1) some police officers did not immediately submit reports of their hours worked to the City, which delayed the City's preparation of invoices for the outside vendors, and payment to the officers; and 2) the City was unable to confirm the actual number of hours worked by an officer until it was itself paid by the outside vendor. Def. Br. at 4–5.

It may be that this case is factually unlike *Brooks* and that defendant could benefit from the (overlooked) exception to the general rule of the DOL bulletin: "When the correct amount of overtime compensation cannot be determined until some time after the regular pay period ... the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable." 29 C.F.R. § 778.106. However, "[p]ayment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made...." *Id.*

■ The apparent purpose of this exception is to forgive employers who are not able to promptly pay overtime because of problems with accounting—or employee accountability. New Brunswick claims both circumstances. And because the exception precludes liability in certain limited situations where an employer has not demonstrated obvious "fault," this court is impressed and adopts it as an applicable rule. *See generally Brooks*, 185 F.3d at 135 (3rd Cir.1999) ("The level of deference given to an interpretative bulletin is governed by the bulletin's persuasiveness."). The *Brooks* decision recognized the legal exception, though finding it inapplicable to the facts. *See* 978 F.Supp. at 618 (D.N.J. 1997) ("It is true that the interpretive regulation permits an employer to delay payment for a period 'reasonably necessary for the employer to computer and arrange for payment of the amount due' if 'the correct amount of overtime compensation cannot be determined until some time after the regular pay period [.]' ... However, the Village has made no showing that it experienced any difficulty in determining the amount of overtime wages owed to plaintiffs each week."). *Cf. also Mullins v. Howard County, Maryland*, 730 F.Supp. 667, 669 (D.Md.1990) ("*[I]f the amount of overtime compensation can be readily determined*, it should be provided on the next regularly scheduled payday.") (emphasis added); *Brennan*, 1973 WL 1285, at *2 ("The State of New Jersey faces no apparent difficulty in computing the overtime due its employees at the end of each pay period. A simple mathematical computation should allow overtime to be paid in the pay period in which it is worked.").

■ The court has reviewed the "overtime payment schedules" submitted by the defendant. Def. Br. Exh. B. In the vast majority of instances, the City sent

invoices to outside vendors within one week of each extra-duty assignment. Further, the schedules reveal that the delay between a vendor's payment to the City and the City's payment of the officers, was typically between two to four weeks. *Id.* To determine whether the delayed-computation exception will exonerate the defendant, the fact-finder will have to evaluate evidence relevant to when the City was first able to "compute and arrange for" payment of the correct amount of extra-duty overtime compensation; the period of time "reasonably necessary" to do so; whether the City paid extra-duty officers by the next regular payday after such computation was made; and generally whether the delay in payment was due to neglect by the officers or by the defendant City.[1] The City should, of course, be aware that mere bureaucratic inertia is no excuse for late payment or nonpayment of wages: "An employer may not set up an inefficient accounting procedure and then claim it is not responsible for timely payment of wages due to its own incompetence." *Dominici,* 881 F.Supp. at 320. And the defendant's explanation that outside vendors often delay their payments to the City improperly attempts to shift the blame to such third parties and to turn attention away from the appropriate "reasonableness" standard. Def. Reply Br. at 4. However, until the underlying factual issues are resolved, this court will not decide the liability issue involving purportedly delayed payments. To that extent, plaintiffs' motion for summary judgment is denied.

▮ In contrast, the defendant does not challenge plaintiffs' assertion that overtime payments of over $9,000 remain outstanding. Dockhorn Aff. ¶ 4. Plaintiffs have submitted numerous sheets entitled "Extra Jobs Back Pay" to support this demand. *See* Attachments to Dockhorn Aff. Because this documentation does not demonstrate the applicable hourly pay rate, nor adequately tally the allegedly unpaid wages, the court is unable to calculate the amount of these claims. Nonetheless, the court holds that the defendant is bound by both 29 U.S.C. § 207 and 29 C.F.R. § 778.106 to have promptly paid the outstanding sum of approximately $9,000. Final computation will await further proof.

### 5. *Good Faith and Reasonableness Defense to Liquidated Damages*

▮ To resay, the defendant vigorously challenges plaintiffs' application for liquidated damages. It argues that because it made a good faith and reasonable effort to comply with FLSA provisions, and because it did not "attempt to escape the requirements of the Act," Def. Br. at 4, the court should exercise its discretion to deny liquidated damages.[2]

1. In its brief opposing plaintiffs' motion, the City remarks: "New Brunswick does not dispute that sometimes the officers were paid more than 30 days, and in some cases, more than

    Further, the court acknowledges the City's protestations that plaintiffs have improperly measured the timeliness of their claims from the date of the assignment to the date of payment. Def. Reply Br. at 2. The defendant takes the position that the court should consider only the period after payment is received from the outside vendor. *Id.* at 3.

    At this time, the court endorses neither party's test. Instead, the fact-finder should deploy the factors found in the interpretive bulletin."

2. Initially, plaintiffs contend that because the City failed to assert this issue in its answer to

the complaint, it is now waived. Pl. Reply Br. at 2. The plaintiffs rely on Fed.R.Civ.P. 8(c), which requires a defendant to set forth enumerated defenses "and any other matter constituting an avoidance or affirmative defense" in a responsive pleading. That argument, contingent on plaintiffs' erroneous characterization of the good faith issue as an "affirmative defense," fails. Though it is clear that the burden of proof on this issue rests with the employer, *see, e.g., Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982) (District Court has discretion to deny or limit liquidated damages if employer satisfies its "plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a

29 U.S.C. § 216(b) ordains: "Any employer who violates the provisions of ... section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid ... overtime compensation ... and an additional equal amount as liquidated damages." "The liquidated damages provision amounts to a Congressional recognition that failure to pay the statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due." *Brooks,* 185 F.3d at 136 (3rd Cir. 1999) (citations omitted). Despite that mandatory language, Congress has, through Section 260 of the Portal–to–Portal Act, authorized courts to mitigate the harshness of that rule: "In any action commenced ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260.

The Third Circuit describes the appropriate inquiry:

The good faith requirement is a subjective one that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer under the objective reasonableness test. If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

*Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907–908 (3rd Cir.1991) (quoting *Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 129 (3rd Cir.1984). "A defendant's burden of proof is 'a difficult one to meet.'" *Id.* at 908 (citation omitted). Before this court exercises its discretion to limit or deny liquidated damages, the defendant City must meet its "plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Tri–County Growers,* 747 F.2d at 129 (citation omitted).

Plaintiffs here contend that their entitlement to liquidated damages is clear. Pl. Br. at 8. The officers say that the City has consistently failed to respond to their complaints about late extra-duty overtime payments, and has abdicated its responsibility, under City Ordinance 6–27(g), to secure from outside vendors a bond for 50% of anticipated compensation as a precondition to the provision of extra-duty officers. Pl. Br. at 9.

Further, they offer correspondence between the parties about the ongoing dispute: plaintiffs' counsel wrote the City Attorney to complain that extra-duty police officers were not timely paid, and that "[i]n some cases, patrolmen have had to

compensatory verdict"), the court has found no authority that an employer's assertion of good faith is an affirmative defense which falls within the pleading requirements of Rule 8(c). Several cases cited by plaintiffs are inapposite, *see Fallon v. Illinois,* 882 F.2d 1206 (7th Cir.1989) (Equal Pay Act and Title VII case), and *Adair v. City of Kirkland,* 185 F.3d 1055 (9th Cir.1999) (barring employer from raising issue on appeal that it had not asserted before the District Court); the remainder do not reach so far, *see Clark v. J.M. Benson Co., Inc.,* 789 F.2d 282 (4th Cir.1986) (invocation of *exemption* from FLSA requirements is an affirmative defense).

wait *more than a year* before receiving their wages." *See* Kiernan letter, Resnick Cert. Exh. B. Plaintiffs there cited New Jersey statutes which require the prompt payment of wages, N.J.S.A. 34:11–4.2 and 34:11–4.4, and "reminded" the City of Police Department General Order No. 3.10(1)(a)(5): "Department members must remember that extra-duty police employment is considered on-duty status, and therefore all General Order and Department regulations shall apply, and are in full effect whenever a member is on extra-duty assignment." The City Attorney answered: "While the City does not agree with everything in your letter, we agree that delay in payment of the kind that you have described and that we have confirmed is intolerable. The City is tightening up the administration of the Extra Duty program and will be taking other steps to rectify the present problem and prevent its recurrence." *See* Hamilton letter, Resnick Cert. Exh. A. These letters, submitted by plaintiffs to demonstrate that the City has not disputed its wrongdoing, were exchanged in July 1996. The record is not clear as to what changes, if any, the City has implemented since, although plaintiffs acknowledge that the City has "started to work toward [such] ends." Pl. Br. at 10.

Initially, the City objects that the general New Jersey wage statutes cited by plaintiffs' counsel are inapplicable to this overtime case, and that the local ordinance requiring contractors to post a 50% bond applies only where police officers are hired to control traffic—not to myriad extra-duty assignments. Def. Br. at 7–8. The court acknowledges the disputes; but neither issue is sufficient to resolve this motion.

Instead, the court focuses on the City's substantive defense that it has taken actions to investigate and ameliorate legal violations. Police Director Michael Beltranena, Jr. certifies that he first learned of officers' complaints of late overtime payment in November 1995, and that he at that time spoke to the administrator of the extra-duty program. Beltranena Cert. ¶ 8. The administrator responded that officers frequently did not submit hourly records on time, which delayed the City's preparation of invoices to send to vendors. Director Beltranena also asserts that the Department took affirmative steps to ensure payment: the City refused to send extra-duty officers to work for vendors who were delinquent in payment, and the Law Department successfully collected debts from some overdue accounts. *Id.* ¶¶ 8–9. Finally, the Director certifies that, to the best of his knowledge, there have been no instances of unpaid extra-duty since new staff persons assumed administration of the program. *Id.* ¶ 11.

These submissions are made to demonstrate the defendant's subjective good faith. As said, the City bears the burden of demonstrating that it had "an honest intention to ascertain and follow the dictates of the Act," *see Tri–County Growers,* 747 F.2d at 129—not merely that it acted without malice. Inexplicably, the defendant does not argue that it has ever made an attempt to determine the requirements of the FLSA, corresponding interpretations or applicable caselaw. This circumstance weighs against a potential argument that the City was objectively and "reasonably entitled to believe that [its actions] did not controvert the law." *Brooks,* 185 F.3d at 139 (3rd Cir.1999). *See also Keeley v. Loomis Fargo & Co.,* 183 F.3d 257, 270 (3rd Cir.1999) (commenting that under Third Circuit precedents, "reasonable good faith is not shown when an employer does not inquire about the law's requirements, simply follows an industry trend of not complying with the law, or violates the law in order to remain competitive.").

Nonetheless, the court concludes that the City has presented sufficient evidence of its efforts to comply with the law to survive this motion. Several issues are disputed: at trial, after resolving liability and whether the defendant acted in both

subjective and reasonable good faith, the court will consider whether an award of liquidated damages is warranted.

### 6. *Statute of Limitations*

The complaint in this action was filed September 2, 1997. New Brunswick argues that because of the FLSA two-year statute of limitations, *see* 29 U.S.C. § 255(a), plaintiffs' claims for delayed payment or nonpayment that accrued before September 2, 1995 are barred. Plaintiffs counter that the statute of limitations may be extended to three years where a plaintiff can demonstrate defendant's "willful violation" of the law. *Id.*

■■■■ The court should allow plaintiffs the three-year statute of limitations if defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA. *Reich v. Gateway Press, Inc.,* 13 F.3d 685, 702 (3rd Cir.1994) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). The Third Circuit has authorized the extended limitations period where an employer expressed doubts to its employees and counsel that it was not in compliance with the law, but then chose to "hush it up." *Martin v. Selker Bros.,* 949 F.2d 1286 (3rd Cir.1991).

■■■■ The extent and success of the defendant's efforts to comply with the FLSA are disputed. To repeat, the City claims that it tried to improve its process of collecting timely payment from vendors, and that some of the delay was due to the officers' own oversight in timely submitting paperwork. Until such factual issues are resolved, the statute of limitations issue remains.

### 7. *Named Plaintiffs*

Defendant objects that several officers unnamed as plaintiffs in the complaint have nonetheless asserted claims for liquidated damages.[3] The City complains that

the court should not consider the claims of these non-plaintiff officers, because authorization of an open-ended claims process would render it impossible for the City to calculate its potential liability. Further, defendant argues, several named plaintiff officers have failed to submit evidence supporting their demands, and summary judgment should be granted in its favor on such officers' claims.

■■■■ A FLSA lawsuit is not a typical class action subject to Fed.R.Civ.P. 23. *See, e.g., U.S. v. Cook,* 795 F.2d 987 (Fed. Cir.1986). Instead, the federal statute establishes an "opt-in" procedure, which provides a cause of action which one or more employees may commence "for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Such procedure is essentially a mechanism for permissive joinder to streamline potentially duplicative litigation. To control the boundaries of such a so-called "collective" plaintiff class, and to ensure that only willing plaintiffs are bound by an adverse judgment, the law mandates: "No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

■■■■ Though the parties have not raised the issue, it appears that not one of the purported plaintiffs, whether named or unnamed in the complaint, has filed such written consent form. Such omission raises a potential statute of limitations issue, governed by 29 U.S.C. § 256:

> In determining when an action is commenced for purposes of section 255 of this title [which establishes two- or three-year statute of limitations] . . . an action commenced . . . under the Fair Labor Standards Act . . . shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action

---

**3.** Officers Bertucci, Buckelew, Finney, Molnar, Rankins, Seavers, and Zano were not named plaintiffs but submitted certifications in support of the plaintiffs' motion.

institute under the Fair Labor Standards Act ... it shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed in such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear— on the subsequent date on which such written consent is filed in the court in which the action was commenced.

Until the non-named plaintiff officers file the prerequisite written consents with this court, they are not considered joined to a collective action and the statute of limitations on their claims is not tolled. *See* 29 U.S.C. § 256(b); *see also Kuhn v. Philadelphia Elec. Co.*, 487 F.Supp. 974 (E.D.Pa.1980) ("basic prerequisites" to collective action are filing of complaint and individual written consents). And such signed consents, if and when properly filed, will not "relate back" to the original filing date of the complaint. *Id.* at 975. Should officers not named in the complaint file consent forms in the future, the court directs them to simultaneously submit additional evidence and/or briefing on the statute of limitations issue, and authorizes the defendant City to renew its motion for summary judgment on their claims.

However, the officers named in the complaint are not barred by the absence of consent forms from proceeding with a non-collective action on solely their own behalf. Pursuant to the introductory phrase of Section 256, the claims of the named plaintiffs commenced with the filing of the complaint, and the statute of limitations was tolled in September 1997. *See Perella v. Colonial Transit, Inc.*, 148

F.R.D. 147 (W.D.Pa.1991) (where no claimants, named or unnamed, had filed consents to suit, and statute of limitations had expired, court permitted solely named plaintiff to proceed with her claim as an individual action); *Vivone v. Acme Markets, Inc.*, 687 F.Supp. 168 (E.D.Pa.1988) (purpose of opt-in requirement is to "give employers a greater measure of certainty about whom they would be facing in court," and that goal is met when a named plaintiff files a complaint).

## 8. *Injunctive Relief*

The last issue presently before the court is plaintiffs' application for temporary restraints pursuant to Fed.R.Civ.P. 65, and a hearing to request a permanent injunction. The parties addressed this issue at oral argument. Accordingly, the court treats the request for temporary restraints as one for a preliminary injunction. *See* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Pract. & Proc.: Civil 2d § 2951 at 256; *see also Delaware Valley Transplant Program v. Coye*, 678 F.Supp. 479 (D.N.J.1988).

On May 3, 2000, while the parties' cross-motions were pending, the Town Council of the City of New Brunswick amended the governing ordinance to reduce the effective pay of extra-duty officers from $29.00 to $26.00 hourly.[4] Plaintiffs contend that such action was taken in retaliation for their FLSA claims against the City, and quote the preamble of the amendment: "The City is faced with the possibility of an adverse judgment in a pending case arising out of police extra duty. The reallocation of amounts payable to officers and the City ... will enable the City to recoup the amount of such a judgment and thereby protect the City's taxpayers from the burden of such a judg-

4. The parties calculate the officers' pay rate by subtracting the City's "administrative fee" from the rate charged to outside vendors. Thus, they agree that through 1999, vendors were charged $25, the City kept $2, and officers received $23. Effective January 1, 2000, vendors were charged $33, the City kept $4, and officers were paid $29 per hour. Finally, under the May 2000 amendment, vendors are charged $35, the City retains $9, and officers receive $26 per hour.

ment." Further, plaintiffs submit a news article which reports that the New Brunswick City Attorney requested that the council consider the amendment, and that the amendment "could be dropped" if the City prevails in this lawsuit. The officers claim that the City's actions in amending the local ordinance to reduce their pay violates 29 U.S.C. § 215(a)(3), which makes it unlawful:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding....

Plaintiffs now seek a preliminary order to preclude the City from implementing the amended ordinance, and to prevent any further retaliatory conduct or intimidation in connection with their efforts to enforce their FLSA rights.

The City responds that the amendment was motivated purely by fiscal necessity, and that it was forced to act when it learned of plaintiffs' claim for liquidated damages in December 1999. *See* Certification of City Administrator Thomas A. Loughlin, 3rd, ¶ 7. It contends that it acted in good faith and that it simply sought to prudently administer its budget. *Id.* ¶ 10. Finally, the City argues that in January 2000, years after this lawsuit was filed, it had granted extra-duty officers a long-sought pay raise, and that such generosity disproves plaintiffs' allegations that it acted with retaliatory motive when it reduced their pay rate five months later.

■ To secure a preliminary injunction, plaintiffs must demonstrate that: 1) they are likely to experience irreparable harm without an injunction, and 2) they are reasonably likely to succeed on the merits. *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484 (3rd Cir.2000). If relevant, the court should also examine the likelihood of irreparable harm to the non-moving party and whether the injunction serves the public interest. *Id.*

■ The court is unpersuaded by the City's explanation for its actions, particularly in light of the City's express admissions that the amendment was passed in response to plaintiffs' claims against it. Plaintiffs' reference to the decision of *Blanton v. City of Murfreesboro,* 856 F.2d 731, 735 (6th Cir.1988), which interpreted a similar FLSA antiretaliation provision, is apt. There the Sixth Circuit scrutinized a municipality's assertion of fiscal necessity where it had unilaterally reduced its employees' base wages to offset the cost of paying them newly-mandated benefits, and concluded:

> [T]he purpose [of the antiretaliation provision] was to prevent unilateral reductions in pay or benefits by public employers who would otherwise take such action "so as to negate the premium compensation mandated by this legislation." ... We believe this language ... clearly suggests that an employer has a defense to a unilateral reduction in wage rates only if the employer can prove that the employee wages were reduced out of fiscal concerns not attributable to extending the Act's coverage to municipal employees. Public employers may not take such steps, however, solely and directly in response to the extension of the Act's coverage....

Following that reasoning, this court has no doubt that New Brunswick enacted the May 2000 ordinance amendment to "repay" the plaintiffs "in kind," and that such would likely sustain liability pursuant to the antiretaliation provision of Section 215. Such conclusion is based on the City's admissions in the ordinance itself, and in the affidavit of the New Brunswick City Administrator, that the pay cut was unilaterally enacted in direct response to the possibility that plaintiffs' legal claims will succeed.

■ Nonetheless, the court is unable to conclude that plaintiffs are faced with irreparable harm. To make such showing, plaintiffs must demonstrate that they face

"harm that cannot adequately be compensated after the fact by monetary damages." *Adams*, 204 F.3d at 484–85 (citing *Morton v. Beyer*, 822 F.2d 364 (3rd Cir. 1987), which held that plaintiff suing for unlawful discharge could not establish irreparable harm based on his loss of wages: "[a]lthough we are not insensitive to the financial distress suffered by employees whose wages have been terminated, we do not believe that loss of income alone constitutes irreparable harm.").

Plaintiffs here are faced with a pay cut of effectively $3.00 per hour. Although such prospective loss of wages may cause hardship to the plaintiff officers, it is clearly the type of injury which is readily calculated and remedied after the fact by monetary damages. The Third Circuit cautions that, "regardless of what the equities seem to require," the courts are not empowered to deploy "the dramatic and drastic power of injunctive force" in absence of a showing of irreparable injury. *Adams*, 204 F.3d at 484, 487 (citation omitted).

Accordingly, plaintiffs' motions for preliminary and permanent injunctive relief are denied. However, pursuant to plaintiffs' request and the liberal standard of Fed.R.Civ.P. 15(a), the court grants plaintiffs leave to amend their complaint, within 20 days of the date of this opinion, to add a retaliation claim.

## CONCLUSION

The plaintiffs named in the complaint are authorized to proceed with this action on their own behalf, and need not file written consents to sue. In contrast, pursuant to 29 U.S.C. § 256, claimant officers not yet named in the complaint are directed to file written consents to sue with the court to commence their claims and toll the statute of limitations.

Substantively, the court holds that the plaintiff police officers are employees of the defendant City of New Brunswick during extra-duty assignments, within the meaning of the Fair Labor Standards Act. The defendant's motion for summary judgment on the theory that plaintiffs are not protected by the FLSA while on these assignments is therefore denied. Likewise, because the City's alleged "willfulness" in violating the law is in dispute, its motion for summary judgment to limit plaintiffs to a two-year statute of limitations is denied.

Plaintiffs' motion for summary judgment on liability and liquidated damages is denied. The City has produced evidence relevant to both its liability under the FLSA and 29 C.F.R. § 778.106, and its potential good faith/reasonableness defense to an award of liquidated damages.

Finally, the court denies plaintiffs' applications for preliminary and permanent injunctive relief because they have not demonstrated the presence of irreparable injury. However, plaintiffs are authorized to amend their complaint to add a claim for retaliation under the FLSA.