Terrance HUNTER, et al., Plaintiffs,

v.

**SPRINT CORPORATION,**
**et al., Defendants.**

No. CIV.A.04–376(JDB).

United States District Court,
District of Columbia.

Nov. 16, 2004.

Dan Charles Getman, Law Office of Dan Getman, New Paltz, NY, Garry G. Geffert, Martinsburg, WV, for Plaintiff.

Christopher H. Mills, Collier, Jacob & Mills, Somerset, NJ, for defendant.

## MEMORANDUM OPINION

BATES, District Judge.

The named plaintiffs in this matter are nine network engineers who work for defendants Sprint Corporation and its subsidiaries (collectively "Sprint" or "defendants"). They have filed in this Court under the "collective action" provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b), alleging that Sprint failed to pay them and similarly situated employees the overtime wages to which they are entitled under the Act. Presently before the Court is plaintiffs' motion to approve collective action notice, in which plaintiffs—each of them members of a work group at Sprint known as the Internet Protocol Core Group—ask the Court to designate all of the employees in the Internet Protocol Core Group, as well as all of the employees in a separate work group known as the Internet Services Assurance Group, as "similarly situated" to plaintiffs and therefore entitled to notice of the collective action. Plaintiffs also seek an order instructing defendants to provide plaintiffs with the names and addresses of class members, and approving their proposed form of the notice of the collective action.

## BACKGROUND

The nine named plaintiffs work as network engineers for Sprint. Each is a member of a work group known as the Internet Protocol Core Group. *See* Certification of David M. Ham ("Ham Cert.") ¶ 5. There are a total of fifteen employees in the Internet Protocol Core Group, and they all have roughly the same set of duties: to determine whether a problem with Sprint's computer networks is caused by software or hardware, and if the problem is caused by software, to fix the problem. *See id.;* Decl. of Terrance Hunter ("Hunter Decl.") ¶¶ 5–10; Decl. of Wesley George dated May 25, 2004 ("George Decl.") ¶¶ 6–11; Decl. of Stephen Plys ("Plys Decl.") ¶¶ 6–11.

The employees in the Internet Protocol Core Group had once been members of a larger work group at Sprint known as Internet Backbone Operations. *See* Hunter Decl. ¶ 6; George Decl. ¶ 7; Plys Decl. ¶ 7. In early 2003, as part of a corporate reorganization, Internet Backbone Operations was divided into two separate groups: the Internet Protocol Core Group and the Internet Services Assurance Group. *See* Ham Decl. ¶ 3. As plaintiffs describe it, the members of the Internet Services Assur-

ance Group "do basically the same job" as the members of the Internet Protocol Core Group, except that the Internet Services Assurance Group works on problems between the Sprint network and individual customers, whereas the Internet Protocol Core Group works on problems within the network that typically affect multiple customers. Decl. of Wesley George dated Aug. 23, 2004 ("Supp. George Decl.") ¶ 2.

During 2003, defendants undertook an audit to determine whether many of the employees in the Internet Protocol Core Group and the Internet Services Assurance Group had appropriately been classified as exempt from the overtime requirements of the Fair Labor Standards Act (FLSA). See Ham Cert. ¶ 7. As a result of the audit, defendants reclassified at least eleven members of the Internet Services Assurance Group to non-exempt status.[1] See id. ¶ 8. A few months later, defendants reclassified all fifteen employees of the Internet Protocol Core Group to non-exempt status as well. See id. ¶ 10. Defendants began paying overtime to all of the employees it reclassified as non-exempt. See Hunter Decl. ¶ 15; George Decl. ¶ 16; Plys Decl. ¶ 16. Defendants also say that they paid the reclassified employees back overtime wages at a rate of one-half of the employee's hourly rate for any "verifiable and/or reasonable" overtime hours the employees had worked during the previous two years. Ham Cert. ¶ 11–13.

In addition to the employees in the Internet Protocol Core Group, and the employees in the Internet Services Assurance Group whom defendants reclassified as non-exempt, there are two other sets of employees relevant to this motion. First, there are several employees in the Inter-

net Services Assurance Group whom defendants have always classified as non-exempt from the FLSA, and therefore eligible for overtime compensation. See id. ¶ 9; Supp. George Decl. ¶ 3. Second, there are anywhere between ten and twenty members of the Internet Services Assurance Group whom defendants have always classified as exempt and did not re-classify as non-exempt along with the other employees in 2003. Accordingly, defendants continue to treat these ten to twenty employees as ineligible for overtime pay. See Supp. George Decl. ¶ 5.

On March 8, 2004, one of the employees in the Internet Protocol Core Group whom defendants reclassified as non-exempt commenced this "collective action" under the FLSA on behalf of himself and all similarly situated employees seeking back pay and liquidated damages for what he claims was the defendants' willful failure to pay the employees overtime wages. Complaint at 2, 4. Some time thereafter, plaintiff filed an Amended Complaint adding eight other employees as named plaintiffs. Each of the new plaintiffs is also a current or former member of the Internet Protocol Core Group. See Amended Complaint at 5; Ham Cert. ¶ 5.

Plaintiffs have now filed a motion asking the Court to designate as "similarly situated" to them all persons who are "part of what is called the Internet Protocol Core Group and the Internet Services Assurance Group," and to authorize the distribution of notice of the collective action to those employees. Pls'. Mot. to Approve Collective Action Notice ("Pl. Mem.") at 2. Plaintiffs also ask the Court to order defendants to provide the names and addresses of these similarly situated employ-

---

1. Defendants state at one point that as many as twenty-five employees in the Internet Services Assurance Group were voluntarily reclassified to non-exempt status. See Defs.' Supp. Brief in Resp. to Pl.'s Mot. to Proceed as a Collective Action ("Def. Supp. Mem.") at 1.

ees, and to approve plaintiffs' proposed form of notice to the class.

## ANALYSIS

■ The FLSA authorizes a plaintiff to challenge the denial of overtime compensation on behalf of herself and any "other employees similarly situated." 29 U.S.C. § 216(b). This unique cause of action, known as a "collective action," is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23. *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 229 (S.D.N.Y. 2003); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 496 (D.N.J.2000). Instead, a collective action has only two threshold requirements: the plaintiff must show that she is similarly situated to the other members of the proposed class, and those other members must "opt in" to the proposed class. *See McNeil v. Dist. of Columbia*, 1999 WL 571004, at *1 (D.D.C. Aug.5, 1999) (Facciola, M.J.); *Vengurlekar*, 220 F.R.D. at 229; *Morisky*, 111 F.Supp.2d at 496.

■ To determine whether a class should be certified under the FLSA, a court will usually proceed in two steps. At the first stage of the analysis, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003) (quotation omitted); *see Cameron–Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n. 2 (11th Cir.2003); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). If the plaintiff is able to make that showing, the class is "conditionally certified" and the members of the class are given notice

of the collective action and an opportunity to "opt in" to the litigation. *Cameron–Grant*, 347 F.3d at 1243 n. 2; *Flores*, 289 F.Supp.2d at 1045; *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 264 (D.Conn.2002). The action then proceeds as a representative action through the discovery period. *Mooney*, 54 F.3d at 1213–14; *Scott*, 210 F.R.D. at 264.

■■ The second step of the analysis occurs at the close of discovery, when the defendant may move to decertify the class in light of the record that was developed during the discovery period. *See Cameron–Grant*, 347 F.3d at 1243 n. 2; *Flores*, 289 F.Supp.2d at 1045; *Scott*, 210 F.R.D. at 264. The court then makes a factual finding as to the whether the proposed class members are similarly situated. *See Cameron–Grant*, 347 F.3d at 1243 n. 2; *Mooney*, 54 F.3d at 1214; *Scott*, 210 F.R.D. at 264. If the court determines that the putative class is similarly situated, then the action proceeds to trial. If the court determines that the putative class is not similarly situated, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the named plaintiffs proceed to trial in an individual capacity. *See Mooney*, 54 F.3d at 1214; *Scott*, 210 F.R.D. at 264.

■ Plaintiffs are at the first stage of the certification analysis. They are asking the Court to designate a group of similarly situated employees for conditional certification, to facilitate the certification process by ordering defendants to produce the names and addresses of employees in the proposed class, and to approve the form of the notice to be distributed to the class.

### A. The Conditional Certification of Employees as "Similarly Situated"

Plaintiffs in this case ask for conditional certification of all persons who are "part of

what is called the Internet Protocol Core Group and the Internet Services Assurance Group." Mot. at 2.[2] It is useful to break down this proposed class into the four sets of employees it comprises: (i) the fifteen employees in the Internet Protocol Core Group whom defendants reclassified as non-exempt in 2003; (ii) the eleven to twenty-five employees in the Internet Services Assurance Group whom defendants reclassified as non-exempt in 2003; (iii) the employees in the Internet Services Assurance Group whom defendants have consistently classified as non-exempt; and (iv) the ten to twenty members of the Internet Services Assurance Group whom defendants have consistently classified as exempt and did not reclassify as non-exempt in 2003. The named plaintiffs are all in the first set of employees; that is, they are all members of the Internet Protocol Core Group who were reclassified as non-exempt in 2003.

Defendants concede that the employees in the first two sets of employees are "similarly situated" to the named plaintiffs, and are therefore entitled to notice of the collective action. See Defs.' Br. in Resp. to Pl.'s Mot. to Proceed as a Collective Action ("Def. Mem.") at 2–3. Defendants dispute, however, that any of the employees in sets three or four belong in the collective action. See Def. Mem. at 3–4; Def. Supp. Mem. at 1–2. Plaintiffs eventually appear to acknowledge that the employees in set three are not properly in the collective action, narrowing the definition of the collective action from all employees in the Internet Protocol Core and Internet Services Assurance Groups to all such employees who were not paid overtime within the last three years. See Pl. Supp. Collective Action Mem. ("Pl. Supp. Mem.") at 3.

With regard to the employees in set four, however—those in the Internet Services Assurance Group whom defendants did not reclassify as non-exempt in 2003— the parties continue to disagree. Plaintiffs maintain that these members of the Internet Services Assurance Group had similar job responsibilities to the named plaintiffs, and that they were all the victims of the same policy and practice of a refusal by Sprint to pay additional compensation to its network engineers for overtime work. See Pl. Supp. Mem. at 3. Defendants counter that there is a critical distinction between the employees in set four and the named plaintiffs: the employees in set four have always been classified by Sprint as exempt from overtime compensation, whereas the named plaintiffs (and the other employees whom defendants agree are entitled to notice) were voluntarily reclassified as non-exempt and paid back wages for overtime.

Accordingly, the legal issue posed by plaintiffs' motion reduces to whether employees who are classified by their employer as exempt from the overtime provisions of the FLSA are "similarly situated" within the meaning of the FLSA to employees who are classified by their employer as non-exempt. The Court will assume for purposes of this motion that the job responsibilities of the employees whom Sprint has consistently classified as exempt are similar to those of the employees whom Sprint reclassified as non-exempt. Of course, the very fact that Sprint reclassified some employees while choosing not to reclassify others suggests that, at least in its view, there are important differences between the two groups of employees. Even so, Sprint does not argue in its papers that their job responsibilities are dif-

**2.** As discussed at *infra* note 4, plaintiffs also request that the class include any individuals who worked in one of those groups in the last

three years but no longer works in the group. See Pl. Rep. Mem. at 1–2.

ferent, and so the Court treats them as similar for the present analysis.

However, a showing that employees are "similarly situated" entails more than just a matching of job responsibilities. The requirement that proposed class members be "similarly situated" to the named plaintiffs ensures that the collective action promotes the "efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). That goal is compromised at least as much by the addition of new legal claims to the case as it is by the addition of new factual circumstances. For this reason, courts emphasize that class members in a collective action "must share more than a common allegation that they were denied overtime or paid below the minimum wage. The class members must put forth a common legal theory upon which each member is entitled to relief." *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 413 (D.Or.2002); *see also De Luna–Guerrero v. North Carolina Grower's Ass'n,* 338 F.Supp.2d 649, 654 (E.D.N.C.2004) (quotation omitted) (employees in a collective action must "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime").

Although the D.C. Circuit has not addressed the specific factors that are relevant to whether putative class members are "similarly situated" to the named plaintiffs in a collective action, the Third Circuit—one of the few circuits to speak to the issue—has left little doubt that a substantial identity both of factual circumstances and legal claims is required before a collective action may proceed. That court applies a three-part test for determining whether employees are "similarly situated" for purposes of a collective action: "(1) whether they all worked in the same corporate department, division and location; (2) whether they all advanced similar claims; and (3) whether they sought substantially the same form of relief." *Lawrence v. City of Philadelphia,* 2004 WL 945139, at *1 (E.D.Pa. Apr.29, 2004) (quoting *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51 (3rd Cir. 1989)).

Applying this standard to the facts of this case, it cannot be said that the employees classified by Sprint as exempt are advancing "similar claims" or seeking "substantially the same form of relief" as the named plaintiffs. Sprint has voluntarily reclassified the named plaintiffs as non-exempt and compensated them with two years of back overtime pay for the "verifiable" or "reasonable" overtime hours that they worked. The only legal issues raised by their claims in this Court (and by the claims of the other employees reclassified to non-exempt status by defendants) relate to the amount of relief to which they are entitled: specifically, whether defendants' method of determining back pay has fully compensated the employees for the overtime wages they are owed, and whether they are entitled to any liquidated damages under the FLSA for the years they were classified as exempt.

On the other hand, the claims of the employees whom Sprint has classified as exempt would inject into the case an additional legal question bearing on liability: whether Sprint has correctly classified these particular employees as exempt under the FLSA. These employees would also be seeking a different form of relief than the named plaintiffs: damages for the entire period that they have been denied relief, and an order requiring Sprint to begin paying them overtime moving forward. As this matter stands today, however, these disputed issues of law would be litigated exclusively by named plaintiffs

who have already been declared non-exempt, have already received at least some back pay for the period during which they were not originally compensated, and are already receiving overtime pay moving forward.

Plaintiffs cannot identify a single case where a court has included in the same class in a collective action both employees classified by an employer as non-exempt and employees classified by the employer as exempt. In fact, the cases that have had occasion to address the issue have reached or indicated a contrary result. *See, e.g., Aguilar v. Complete Landsculpture, Inc.,* 2004 WL 2293842, at *4 (N.D.Tex. Oct.7, 2004) ("This is not a case, for example, in which the defendants contend that foremen were exempt employees or that they were paid under a different plan."); *Kinnett v. State of Kansas,* 1991 WL 241832, at *1 (D.Kan. Oct.30, 1991) (holding that employee who is "classified as a non-exempt" is "not similarly situated to the other exempt plaintiffs because she is non-exempt"). For all of these reasons, the Court declines at this time to include in the conditionally certified class those employees who have consistently been classified as exempt employees by Sprint.

 Of course, plaintiffs are within their rights to move to amend the Complaint to add one or more of these employees as named plaintiffs. If plaintiffs so move, however, they should be prepared to demonstrate that the circumstances warrant allowing them to amend the Complaint a second time to add new plaintiffs and expand the scope of the litigation.[3] The Court does not provide in this Order any view as to whether plaintiffs should be permitted to again amend their Complaint, or whether plaintiffs may seek to certify an additional collective action of all exempt employees. The Court merely holds today that the collective action device is not designed, or properly used, as an end-run around a formal amendment of the pleadings and the addition of appropriate named plaintiffs.

Accordingly, the Court grants defendants' motion to include in a conditionally certified class all employees in sets one and two, as described *supra:* the fifteen employees in the Internet Protocol Core Group whom defendants reclassified as non-exempt in 2003, and the eleven to twenty-five employees in the Internet Services Assurance Group whom defendants reclassified as non-exempt in 2003. The class will also include any individual who was a member of the Internet Protocol Core Group at any time since March 8, 2001 (even if he no longer is a member of that group), and any individual who was a member of the Internet Services Assurance Group at any time since March 8, 2001, but who left the group before Sprint reclassified employees in the group as non-exempt (or any such individual who was reclassified as non-exempt, and then left the group).[4] The Court denies without prejudice defendants' motion to include in

---

**3.** Plaintiffs maintain that one member of the Internet Services Assurance Group whom Sprint has not reclassified as non-exempt has filed a "consent to sue" form, and that the presence of this individual in the case warrants the inclusion in the class of all other Internet Services Assurance Group employees. This argument misconceives the legal significance of a "consent to sue" form. The form does not turn an employee into a named plaintiff, but is merely the mechanism by which an employee opts in to a collective action class that is represented by the named plaintiffs. *See* 29 U.S.C. § 216(b); *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1064 (9th Cir.2000); *Cahill v. City of New Brunswick,* 99 F.Supp.2d 464, 479 (D.N.J.2000).

**4.** In their papers, plaintiffs request that the class include any individual who was a member of either of the two groups at any point "within the last three years," and defendants

the class the employees in sets three or four: the individuals in the Internet Services Assurance Group who have always been classified as non-exempt, and the individuals in the Internet Services Assurance Group who have always been classified as exempt.

### B. The Production of Names and Addresses

Plaintiffs ask the Court to order defendants to supply the names and addresses of all employees in the conditionally certified class. The Supreme Court in *Hoffmann–La Roche* authorized district courts, in their discretion, to order a defendant to produce the names and addresses of putative class members in a collective action.[5] *See Hoffmann–La Roche*, 493 U.S. at 172, 110 S.Ct. 482. Many courts have since relied on *Hoffmann–La Roche* to order the production of names and addresses of class members in an FLSA collective action. *See, e.g., McNeil*, 1999 WL 571004, at *1; *Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100388, at *2 (D.Minn. Jan.23, 2002); *Miklos v. Golman–Hayden Cos.*, 2000 WL 1617969, at *2 (S.D.Ohio Oct.24, 2000). Defendants do not challenge the produc-

tion of names and addresses here. Accordingly, the Court will exercise its discretion to order defendants to provide the names and addresses of the members of the conditionally certified class.

### C. The Form of Notice

The parties inform the court that in the course of mediation sessions with Magistrate Judge John Facciola, they came to substantial agreement on the form of the notice to the class, and will submit a revised form of notice following the Court's ruling on the issues in this motion. *See* Def. Supp. Mem. at 5; Pl. Supp. Mem. at 4. Accordingly, the Court denies without prejudice plaintiffs' motion to approve its form of class notice.

The parties shall submit to the Court a proposed form of notice on which they have agreed, or plaintiffs and defendants shall each submit to the Court their own proposed form of notice, by not later than December 6, 2004.

### CONCLUSION

For the reasons explained above, plaintiffs' motion will be granted in part and denied in part.

---

do not challenge this request. Pl. Rep. Mem. at 1–2. The Court agrees that any member of the Internet Protocol Core Group who was denied overtime wages is entitled to notice of the collective action, even if she is not presently a member of the group. However, plaintiffs do not suggest a precise date for the start of the class period, and so the Court will use March 8, 2001, which is the date three years prior to the filing of the complaint in this matter. *See* 29 U.S.C. § 255(a) (three year statute of limitations for willful violations of the FLSA).

The matter is somewhat more complicated with regard to the Internet Services Assurance Group. Some of the employees in that group were eventually reclassified as non-exempt, while others continued to be classified as exempt, and therefore it is difficult to know whether an employee who departed the group prior to reclassification would have

been reclassified had he stayed. Discovery should shed light on this issue. Accordingly, the Court will also conditionally certify—subject, as always, to the possibility of de-certification after discovery—all employees who worked in the Internet Services Assurance Group at any time since March 8, 2001, and who departed the group before Sprint reclassified employees in that group as non-exempt (or who were reclassified as non-exempt, and only then departed the group).

**5.** *Hoffmann–La Roche* involved a claim under the ADEA, which incorporates the "collective action" provision in section 216(b) of the FLSA. *See id.* at 169–70, 110 S.Ct. 482 ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... as incorporated by 29 U.S.C. § 626(b) ... in ADEA actions by facilitating notice to potential plaintiffs.").

The Court will conditionally certify a class consisting of all individuals who worked for defendants in the Internet Protocol Core Group at any time since March 8, 2001, all individuals who worked for defendants in the Internet Service's Assurance Group at any time since March 8, 2001, and who were reclassified by defendants as non-exempt, and all individuals who worked for defendants in the Internet Services Assurance Group at any time since March 8, 2001, but left the group before employees in the group were reclassified by defendants as non-exempt. Defendants shall also produce to plaintiffs the names and addresses of all of the individuals in the conditionally certified class.

The parties, either jointly or independently, shall submit to the Court a proposed form of notice by not later than December 6, 2004.

A status conference is scheduled for December 13, 2004, at 9:15 a.m.

A separate order will issue.

### *ORDER*

Upon consideration of [30] plaintiffs' motion to approve collective action notice, it is hereby ORDERED that the motion is GRANTED in part and DENIED in part, and it is further ORDERED that:

1. A plaintiff class is conditionally certified that is comprised of:

 a. All individuals who worked for defendants in the Internet Protocol Core Group at any time since March 8, 2001;

 b. All individuals who worked for defendants in the Internet Services Assurance Group at any time since March 8, 2001, and who were reclassified by defendants as non-exempt; and

 c. All individuals who worked for defendants in the Internet Services Assurance Group at any time since March 8, 2001, but left the group before employees in the group were reclassified by defendants as non-exempt.

2. Defendants shall produce to plaintiffs the names and addresses of all of the individuals in the conditionally certified class.

3. The parties, either jointly or independently, shall submit to the Court a proposed form of notice by not later than December 6, 2004.

4. A status conference is scheduled for December 13, 2004, at 9:15 a.m.